1
2
3
4          **UNITED STATES DISTRICT COURT**
            **EASTERN DISTRICT OF CALIFORNIA**
5

6   **WESLEY AND VANHDAO FLOWERS,**      **1:04-CV-6692 OWW LJO**

7            **Plaintiffs,**            **MEMORANDUM DECISION AND ORDER:**

8      **v.**                           **(1) GRANTING THE COUNTY OF**
                                        **FRESNO'S MOTION TO DISMISS**
9   **THE CITY OF FRESNO, et al.,**     **WITH PREJUDICE (DOC. 68);**

10           **Defendants.**            **(2) GRANTING THE CITY OF**
                                        **FRESNO AND REDEVELOPMENT**
11                                      **AGENCY'S MOTION TO DISMISS**
                                        **WITH LEAVE TO AMEND (Doc. 65);**
12                                      **AND**

13                                      **(3) DENYING PLAINTIFF'S MOTION**
                                        **FOR DEFAULT JUDGMENT (DOC. 70)**
14

15                  **I.   INTRODUCTION**

16
           Defendants, the City of Fresno ("City"), the
17
    Redevelopment Agency of the City of Fresno ("RDA"), and the
18
    County of Fresno ("County"), move to dismiss the second amended
19
    complaint of Wesley and Vanhdao Flowers ("Plaintiffs") for
20
    failure to state a claim.  Doc. 65, filed May 2, 2005; Doc. 68,
21
    filed May 6, 2005.
22
         Plaintiffs, appearing *pro se*, oppose.  Doc. 70, filed June
23
    27, 2005.  Included in the body of Plaintiffs' opposition is a
24
    renewed motion for default judgment.  *Id*. at ¶28.  Although this
25
    motion was not properly noticed and was never set for hearing, it
26
    is addressed briefly at the end of this memorandum order.
27
28

                               **1**

1

## II.  **PROCEDURAL HISTORY**

2      Plaintiffs filed their initial complaint on December 13,
3  2004, followed by a first amended complaint, filed on December
4  14, 2004.  The first amended complaint alleged that Defendants
5  violated their Fourth Amendment rights by upholding a city
6  building official's administrative abatement of conditions on
7  their property.  Doc. 1.

8      On February 7, 2005, Plaintiffs' first amended complaint was
9  dismissed with leave to amend.  Doc. 35.  Plaintiffs were
10 instructed to file an amended complaint within 20 days of service
11 of a written order.  Although the document was electronically
12 docketed, the Court failed to mail pro se Plaintiffs a copy of
13 the written order, the service of which was to start Plaintiff's
14 twenty day filing window.  As a result, and through no fault of
15 their own, Plaintiffs filed their second amended complaint a few
16 days after the apparent deadline.  Defendants then moved to
17 dismiss for failure to obey a court order.  This motion was
18 denied.  Doc. 66, filed May 3, 2005.  At the hearing on this
19 motion, Plaintiffs were also granted leave to attach additional
20 documents to their complaint.  They did so.  Doc. 67, filed May
21 4, 2005.

22      Defendants now move to dismiss again, this time for failure
23 to state a claim.  Docs. 65 & 68.  Plaintiffs oppose these
24 motions.  Doc. 70.

25 //
26 //
27 //
28 //

**2**

### III.   **FACTUAL BACKGROUND**

This case is, at its core, a dispute over property and local abatement of a structure owned by Plaintiffs, located at 2475 South Lilly, in Fresno, California.  (Compl. at ¶10; *see also* Doc. 76, Attachments to Second Amended Complaint ("Attachements") 11 and 23.)

On April 24, 2003, a Building Code Enforcement Officer, Kendra Mull, called George Flowers (Plaintiff Wesley Flowers' father) in an apparent attempt to contact Plaintiffs.  (Compl. at ¶11.)  After this phone call, Officer Mull allegedly entered Plaintiffs' property and determined that the structure was a "public nuisance."  (*Id*. at ¶11-13.)  She ordered the windows and doors boarded up.  (*Id*. at ¶13; Attachment 1.)  This inspection and work was apparently performed without a warrant and without prior notice to Plaintiffs.  (*Id*. at ¶15.)

By notice dated April 30, 2004, Plaintiffs were billed $631.57 to cover the cost of boarding the "open vacant structure."  The notice cited Fresno Municipal Code section 9-804(f).  (Attachment 1.)

On May 1, 2003, Plaintiffs appealed this notice, following a City review procedure.  On May 21, 2003, the Flowers' appeared before a hearing officer seeking relief from the abatement billing and asking that the City justify its entry onto their property.  (*Id*. at ¶15.)  The presiding Hearing Officer, Robert H. Baida, found that the abatement was proper and that the Flowers' should pay $559.57 in abatement costs.  (*Id*. at ¶17.)

On June 13, 2002, the Flowers' erected a fence and posted "No Trespassing" signs around the property at 2475 South Lilly.

1    (*Id.* at ¶13.)

2        Soon after the fence was erected, another Code Enforcement

3    Officer, Kevin Watkins, called Plaintiffs.  Plaintiffs allege

4    that Watkins threatened them and said he could "cause" them "to

5    pay a lot of money."  (*Id.* at ¶21.)

6        On July 18, 2003, Watkins then issued a "Notice and Order to

7    Repair or Demolish Dangerous Buildings."  (*Id.*)  Plaintiffs

8    received a copy of this notice informing them of the code

9    violations at their property and giving them a period of time to

10   either repair the violations or demolish the building.  The

11   notice also informed Plaintiffs of their right to appeal the

12   order.  (Attachment 7.)

13       On August 6, 2003, Plaintiffs responded to the notice to

14   repair or demolish by submitting a letter that set forth a "plan

15   of action" to Watkins and the City.  (Attachment 8.)  As part of

16   this plan of action, the Flowers' submitted a one page summary of

17   the steps they planned to take to fix the building and when they

18   planned to have each step accomplished.  The letter also

19   explained that Mr. Flowers had suffered a serious knee injury

20   that had prevented him from completing some of their work on

21   time.  The Flowers' requested that they be allowed to postpone

22   work for two months while Mr. Flowers recuperated.  (*Id.*)

23       Some months later, on December 5, 2003, the City filed a

24   Certificate of Existence of a Dangerous Building with the Fresno

25   County Recorder's Office.  The Certificate stated that the

26   Flowers had been previously instructed to complete all repair or

27   demolition by September 16, 2003.  (Attachment 9.)

28       On March 11, 2004, an abatement hearing was held before

**4**

1  Hearing Officer Baida concerning the Flowers' property. (Compl.
2  at ¶26.)  Plaintiffs attempted to prove at the hearing that
3  Officer Watkins had falsified statements in support of the Notice
4  and Order to Repair or Demolish.  The Hearing Officer rejected
5  Plaintiffs' assertions. (*Id.* at ¶26-29.)

6      Also on March 11, 2004, Plaintiffs mailed a complaint to the
7  Code Enforcement Division, alleging that the City's actions
8  constituted trespass, harassment, discrimination, and
9  retaliation. (*Id.* at ¶30; Attachment 10.)  Plaintiffs received
10 no response to this complaint. (Compl. at ¶30.)

11     On May 6, 2004, Robert Richter, an employee of the Planning
12 and Development Division, denied Plaintiffs' request for a re-
13 roofing permit. (*Id.* at ¶32.)

14     On May 7, 2004, Plaintiffs filed a Tort Claim with the
15 City's Risk Managment Division.  On May 26, 2004, Rose Miranda,
16 an employee of the Risk Management Division, responded to
17 Plaintiffs' complaint by indicating that their claim was
18 "insufficient" because it failed to state the amount being
19 claimed. (*Id.* at ¶35.)  Ms. Miranda also apparently requested
20 information concerning Plaintiffs' allegations from Code
21 Enforcement Manager Ray Villa. (*Id.*)

22     On June 15, 2004, in a letter mailed to Plaintiffs, Ms.
23 Miranda concluded that her investigation "clearly indicates that
24 the incident was not caused by any negligence on the part of the
25 City of Fresno or any of its employees." (Attachment 18.)  The
26 letter notified the Flowers that they had six (6) months to file
27 a court action on their claim, citing to California Government
28 Code § 954.6. (*Id.*)

1

2      Meanwhile, on May 11, 2004, Hearing Officer Baida upheld

3 Officer Watkins' Notice and Order to Repair or Demolish.  (*Id*. at

4 ¶38.)  Baida also ruled that Plaintiffs had no right to appeal

5 from his decision.  (*Id*. at ¶39.)  On May 14, 2004, Plaintiffs

6 wrote to Baida regarding their "condescendingly and/or

7 incompetently" denied claim.  (*Id*. at 40.)  Plaintiffs attached a

8 copy of a local regulation providing for an appeal to the City

9 Council.  (*Id*.)  On May 17, 2004, Biada issued a decision in

10 which he (1) invited he parties to submit additional evidence on

11 one issue of whether the City had the right to enter Plaintiffs'

12 property without a warrant and (2) acknowledged that Plaintiffs

13 could appeal his determinations to the City Council.  (*Id*. at

14 ¶41; *see also* Doc. 31, Exh. D.)

15      On May 27, 2004, Dennis L. Beck, a Deputy City Attorney,

16 submitted on the City's behalf materials and legal arguments

17 concerning the City's right of entry onto Plaintiffs' property.

18 (*Id*. at ¶43.  Doc. 31, Exh. C.)  Beck argued that the search was

19 not unlawful because the structure was (1) "vacant, open and

20 apparently abandoned" and (2) that, even if the search was

21 illegal, the evidence gained from the search did not have to be

22 excluded from the administrative hearing during which the order

23 to repair or demolish was reviewed.  (*Id*.)

24      On June 4, 2004, Plaintiffs filed a Complaint requesting

25 that Hearing Officer Baida "cease and desist" his involvement

26 with this case.  (*Id*. at ¶47.)  Baida then issued a supplemental

27 order on July 16, 2004, instructing the City to proceed with the

28 abatement of the structure on Plaintiffs' property.  Baida stayed

**6**

1    the execution of the order, to give Plaintiffs additional time to
2    repair the structure, provided that Plaintiffs (1) submit by
3    August 11, 2004 "all necessary documents for the issuance of all
4    required permits to rehabilitate the buildings/structures on the
5    Subject Property" and (2) rehabilitate the structure(s) on their
6    property "not later than seventy (70) days after [receiving
7    notice from] the City that all required permits are ready for
8    issuance." (Attachment 24.)  As part of this supplemental order,
9    Baida found that it was proper to consider evidence obtained from
10   the City's initial inspection of the property, despite the City's
11   failure to obtain Plaintiff's consent or a search warrant.[1]
12   (*Id.*)

13       On September 20, 2004, Plaintiffs met with Brad Castillo,
14   the then-President of the Fresno City Council in an attempt to
15   convince the council that Watkins' report of a dangerous building
16   was "the commission of absolute fraud."  (Compl. at 49.)

17       On September 21, 2004, acting on the advice of City Manager
18   Daniel Hobbs, the City Council voted 4 to 3 to affirm Baida's
19   July 16, 2004 supplemental order allowing demolition to proceed
20   at Plaintiffs' expense.  (*Id.* at ¶50.)

21       On September 23, 2004, Plaintiffs requested assistance from
22   the Redevelopment Agency (RDA).  The RDA denied the request,
23   apparently because of the unresolved abatement case.  (*Id.* at
24   ¶52.)

25       On October 1, 2004, Plaintiffs notified the County Board of

26

27       [1]    Baida also noted that Plaintiffs' "continued use of
28   rhetoric alleging racism and conspiracies is not helpful to
     [their] cause and [they] should carefully consider its continued
     use."  (Attachment 24.)

**7**

Supervisors about their situation.  Chief Deputy County Council, J. Wesley Merritt, responded that the county had nothing to do with the abatement of Plaintiffs' property.  (*Id.* at ¶53-54. Attachment 28.)

By letter dated October 14, 2004, Plaintiffs were informed that they owed $486.32 in past-due taxes to the City.  The letter notified them of their right to appear at a public hearing set for November 16, 2004.  In response, on November 10, 2004, Plaintiffs tried to deliver to the City Clerk's office a "written protest" to be forwarded to a public official.  (*See* Attachment 31.)  A City Clerk, Rebecca E. Klisch, allegedly refused to accept the document.  Plaintiffs complained about this conduct in a letter sent to Ms. Klisch on December 6, 2004.  (*Id.*)

On December 17, 2004, in yet another hearing before Hearing Officer Baida, Plaintiffs attempted to establish that Officer Watkins had committed fraud.  (Compl. at ¶58; Attachment 32.) Baida again upheld Watkins' actions.  (*Id.*)

Plaintiffs sent a letter of complaint concerning their situation to Senator Barbara Boxer.  (Attachment 34.)  The Senator's office responded by explaining that the issues raised by Plaintiffs are matters of local concern and forwarded Plaintiffss' letter to Mayor Alan Autry.  (Attachment 35.) Finally, Plaintiffs sent a letter of complaint to the Fresno County Grand Jury.  (Attachment 36.)  The Grand Jury responded in similar fashion, by expressing its opinion "that the topic of [Plaintiffs'] concerns is not properly within its province." (*Id.*)

Plaintiffs have also submitted additional documents pertaining to an urban renewal plan for a neighborhood in

Southwest Fresno.  (*See* Attachments to Doc. 70.)  It appears that the urban renewal plan may encompass in the general vicinity of Plaintiff's property on South Lilly, but this is not entirely clear from the record.  Plaintiffs do not explain the relevance of these documents to the allegations in this case.[2]

### IV.   SUMMARY OF THE SECOND AMENDED COMPLAINT

Plaintiff's second amended complaint appears to allege the following:[3]

(1)   Plaintiffs are African-American and South-East Asian residents of the City of Fresno.  Compl. at ¶2.

(2)   Fourth Amendment Claim:

    (a)   Plaintiffs allege that Code Enforcement Officer Kendra Mull, an employee of the City, unlawfully searched Plaintiffs' property without a warrant.  *Id*. at 13.

    (b)   Plaintiffs appeared before Hearing Officer Robert Baida to protest the "illegal search and seizure of their property and building," but maintain that Baida "made and unconstitutional ruling when he upheld and justified the warrantless search and seizure." *Id*. at ¶15.

---

[2]   Although the district court has dedicated a great deal of time and effort to searching and understanding the record in this case, the law is clear -- no court is required to search a record when a party has failed to adequately reference matter that is pertinent.  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

[3]   In federal court, pleadings are to be simple, concise, and direct.  Fed. R. Civ. P. 8(e).  "The purpose of [Rule 8] is to avoid verbose allegations, to notify the other party of the claim or defense being made, and to assist the disposition of the litigation on its merits."  C.J.S. Fed. Civ. Pro. § 304.  The district court has attempted to summarize Plaintiff's second amended complaint.  The document is still verbose and confusing, however, making it difficult to identify the legal and factual bases for their claims.  Plaintiffs are encouraged to restate their claims in a more straightforward and concise manner.  (For example, it is not necessary to use legalistic catch-phrases such as whereupon, whereto, thereby, etc., at the start of every paragraph.)

9

(c)   Plaintiffs assert that they received a "retaliatory" phone call from Code Enforcement Officer Kevin Watkins, an employee of the City of Fresno.  Watkins allegedly threatened Plaintiffs that he could "cause" them "to pay a lot of money".  *Id*. at ¶21.

(d)   Plaintiffs allege that Officer Watkins "fraudulently" issued a Notice and Order to Repair or Demolish Plaintiff's building.  Watkins apparently inspected Plaintiffs' property and Plaintiffs assert that this inspection was "untimely, unconstitutional and done without the rightful knowledge of Plaintiffs."  *Id*. at 22.

(2)   Due Process Claims:

(a)   Plaintiffs allege that they received a "Summary Abatement Billing" without having received "constitutionally adequate notice that they had violated any city ordinance."  Plaintiffs objected to the Billing, but allege that they were not given an opportunity to be heard prior to the boarding up of their property, *id*. at ¶14, and were not afforded any opportunity to appeal the decision, *id*. at ¶17.

(b)   Plaintiffs later challenged the Notice and Order to Repair or Demolish (issued by Watkins) in a hearing before Hearing Officer Baida.  Plaintiffs assert that Baida issued "unconstitutional rulings" and that Baida's "kangaroo court" subjected the Plaintiffs to undue emotional and financial hardships."  *Id*. at 26.  Plaintiffs also allege that Officer Baida neglected his duty and obstructed justice by upholding the summary abatement even though Baida "had actual knowledge of the falsity of Watkin's statements."  *Id*. at ¶28.

(c)   Plaintiffs also allege that their Due Process rights were violated when the City Clerk's office failed to deliver Plaintiff's "written protest" concerning a tax assessment hearing.  *Id*. at ¶55.

(3)   Unconstitutional Statute/Ordinance Claims:  Plaintiffs allege repeatedly that "[t]he statute or ordinance is unconstitutional [and] cannot be legally enforced."  Presumably, plaintiffs are referring to the housing code provision invoked by the City in the abatement proceeding, but this is not entirely clear because they do not refer to an ordinance title or number.

**10**

1    (4) <u>Conspiracy to Violate Civil Rights Claims</u>:

2        Plaintiffs allege that a number of individuals
3    "conspired to [aid] the act of fraud and false
     statements committed by Officer Watkins" in violation
     of Plaintiffs' constitutional rights pursuant to 18
4    U.S.C. §§ 872, 1001, 1018, 1621, 1957 and 2236; and 42
     U.S.C. §§ 1981, 1983, 1985(3), and 1986."  The alleged
5    co-conspirators include:

6    (a)  Code Enforcement Manager John Robertson, who
          issued a Certificate of Existence of a Dangerous
7         Building.  *Id*. at ¶24.

8    (b)  Code Enforcement Manager Ray Villa, who failed to
          reply to Plaintiff's complaints of
9         unconstitutionality.  *Id*. at ¶¶ 30-31.

10   (c)  Robert Richter, an employee of the City's Planning
          and Development Division, who denied Plaintiff's
11        request for a re-roofing permit.  *Id*. at ¶¶32-33.

12   (d)  Rose Miranda, an employee of the City's Risk
          Management division, who reviewed Plaintiff's Tort
13        Claim concerning the warrantless searches and
          Officer Watkins' alleged perjury.  Ms. Miranda
14        responded that Plaintiffs' claim was
          "insufficient."  Plaintiffs also complain that she
15        concluded her investigation without providing
          Plaintiffs an opportunity to amend their claim.
16        *Id*. at ¶¶ 35-36.

17   (e)  Hearing Officer Baida, who presided over various
          hearings pertaining to Plaintiff's property.
18
19   (f)  Deputy City Attorney General Dennis L. Beck, Jr.,
          who allegedly "displayed corrupt attorney behavior
          by submitting "unconstitutional" legal arguments
20        to Hearing Officer Baida concerning the abatement
          action.  *Id*. at ¶¶ 43, 44, 45.
21
22   (g)  Former City Council President Brad Castillo, who
          met with Plaintiffs and allegedly learned facts
          that "indicated Officer Watkins' report of a
23        dangerous building on the subject property was the
          commission of absolute fraud."  *Id*. at ¶49.
24
25   (h)  Former City Manager Daniel G. Hobbs, who
          apparently advised the City Council to rely upon
26        Hearing Officer Baida's decisions when considering
          Plaintiff's situation.  The Council then voted 4
          to 3 to affirm one of Hearing Officer Baida's
27        orders allowing abatement and demolition at
          Plaintiff's expense.  *Id*. at ¶¶ 50-51.
28

**11**

(i)   J. Wesley Merritt, Chief Deputy County Council who failed to take action to investigate allegations raised in Plaintiffs' complaint to Fresno County Board of Supervisors. *Id*. at 54.

(j)   Rebecca E. Klisch, a City Clerk, who refused to accept Plaintiffs' "written protest" for forwarding to a City official. *Id*. at ¶56.

(k)   Senator Barbara Boxer, Mayor Alan Autry, the Fresno Police Department, and the Fresno County Grand Jury, for failing to take action regarding Plaintiffs' complaints. *Id*. at ¶59.

(5)   <u>Claims under 42 U.S.C. § 2000d</u>:  Plaintiffs sought assistance from the RDA, a federally-funded program. The RDA denied their request, apparently because of the ongoing administrative abatement proceeding. Plaintiffs impliedly allege that this denial constituted discrimination in the provision of federally-funded services.

# V.   <u>STANDARD OF REVIEW</u>

In deciding whether to grant a motion to dismiss, a court must "take all of the allegations of material fact stated in the complaint as true and construe them in the light most favorable to the nonmoving party." *Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002).  A motion to dismiss for failure to state a claim is disfavored and rarely granted: "[a] complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted); *see also Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (stating that the issue is not whether plaintiff will ultimately prevail, but whether claimant is entitled to offer evidence to support the claim).

**12**

1  Courts have a "duty...to construe *pro se* pleadings
2  liberally." *Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir.
3  2001); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)).  The pleadings of
4  *pro se* litigants are "held to less stringent standards than
5  formal pleadings drafted by lawyers." *Hughes*, 449 U.S. at 10
6  (quotation omitted).  However, "a liberal interpretation of a
7  [pro se] complaint may not supply essential elements of the claim
8  that were not initially pled." *Pena v. Gardner*, 976 F.2d 469,
9  471 (9th Cir. 1992).

10

11                    **VI.   ANALYSIS**

12       **A.   Claims against the County.**

13       Plaintiffs' only allegation against the County concerns the
14  conduct of Chief Deputy County Counsel J. Wesley Merritt.
15  Plaintiffs filed a complaint with the County about the City's
16  abatement action against their property.  Merritt replied to
17  Plaintiffs on behalf of the County by explaining that the County
18  of Fresno had nothing to do with the dispute.  Plaintiffs allege
19  that Mr. Merritt thereby engaged in a conspiracy that somehow
20  aided Officer Watkins' acts of fraud and false statements.

21       In the Ninth Circuit, conspiracy claims are subject to a
22  heightened pleading standard.  *See Harris v. Roderick*, 126 F.3d
23  1189, 1195 (9th Cir. 1997).  "To state a claim for a conspiracy
24  to violate one's constitutional rights under section 1983, the
25  plaintiff must state specific facts to support the existence of
26  the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819,
27  821 (9th Cir. 1989).  Here, the allegations against the County

28

1  fall far short of this pleading standard.

2      Plaintiffs conceded at oral argument that the County was not

3  a proper defendant in this action.  Accordingly, the County's

4  motion to dismiss is **GRANTED WITH PREJUDICE** and the County is

5  **DISMISSED AS A DEFENDANT.**

6          **B.   Claims Against the City and the RDA.**

7

8              **1.   Claims of unconstitutional statutes and/or
                     ordinances.**

9

10      A complaint must contain "a short and plain statement of the

11  claim showing that the pleader is entitled to relief," Fed. R.

12  Civ. P. 8(a).  At a bare minimum, this statement must "give the

13  defendant fair notice of what the plaintiff's claim is and the

14  grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47

15  (1957).  Plaintiffs have not identified which statutes and/or

16  ordinances are unconstitutional, nor have they provided any facts

17  which would explain how or why the statutes should be deemed

18  unconstitutional.  In its current form, Plaintiff's claims of

19  unconstitutional local statutes and/or ordinances fail to satisfy

20  the minimum requirements of Rule 8 and must be **DISMISSED WITHOUT**

21  **PREJUDICE.**  Plaintiffs will, however, be afforded one final

22  opportunity to amend their complaint to cure these deficiencies.

23

24              **2.   Civil rights claims.**

25      The remaining claims in the second amended complaint allege

26  that Defendants have violated Plaintiffs' civil rights.  Because

27  the United States Constitution does not itself provide citizens

28

**14**

the right to sue in federal court, a plaintiff alleging civil

rights violations must rely on statutory provisions which permit

individuals to seek relief in court.  For example, 42 U.S.C.

§ 1983 provides in pertinent part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United
> States...to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for
> redress....

42 U.S.C. § 1983.  Section 1983 "creates a cause of action

against a person who, acting under color of state law, deprives

another of rights guaranteed under the Constitution." *Henderson*

*v. City of Simi Valley*, 305 F.3d 1052, 1056 (9th Cir. 2002).

But, section 1983, as well as the other civil rights statutes

invoked by Plaintiffs, do not extend liability to all defendants

in the same way.

### a.   *Municipal liability under Monell.*

Although a number of individual local government officials

are mentioned in the <u>body</u> of Plaintiffs' second amended

complaint, none are actually <u>named</u> as defendants, and none have

been personally served.  Instead, Plaintiffs name only the City,

the RDA, and the County as defendants.

Local government entities can be sued for monetary,

declaratory, or injunctive relief, but only if the allegedly

unconstitutional actions took place pursuant to some "policy

statement, ordinance, or decision officially adopted and

promulgated by that body's officers...."  *Monell v. Dep't of Soc.*

**15**

1   *Servs.*, 436 U.S. 658, 690-91 (1978).  Alternatively, if no formal

2   policy exists, plaintiffs may point to "customs and usages" of

3   the local government entity.  *Id*.  A local government entity

4   cannot be held liable simply because it <u>employs</u> someone who has

5   acted unlawfully.

6           A local government may not be sued...for an injury
            inflicted solely by its employees or agents.  Instead,
7           it is when execution of a government's policy or
            custom, whether made by its law-makers or by those
8           whose edicts or acts may fairly be said to represent
            official policy, inflicts the injury that the
9           government as an entity is responsible....

10  *Id*. at 694.[4]

11      To prevail in a civil rights claim against a local

12  government under *Monell*, a plaintiff must satisfy a three-part

13  test:

14      (1)  The local government official(s) must have

15           intentionally violated the plaintiff's constitutional

16           rights;

17      (2)  The violation must be a part of policy or custom and

18           may not be an isolated incident; and

19      (3)  There must be a link between the specific policy or

20           custom to the plaintiff's injury.

21  *Id*. at 690-92.

22      The second element often proves the most difficult to

23  satisfy.  The existence of a "policy or custom" can be shown

24  through proof of a "longstanding practice or custom which

25  _____

26      [4]   Although *Monell* dealt exclusively with claims brought
    under 42 U.S.C. § 1983, its holdings apply with equal force to
27  claims brought under §§ 1981, 1985 and 1986.  *See Luke v. Abbott,*
    954 F. Supp. 202, 203 n.1 (C.D. Cal. 1997).
28

**16**

1  constitutes the 'standard operating procedure' of the local

2  government entity." *Ulrich v. City and County of San Francisco,*

3  308 F.3d 968, 984-85 (9th Cir. 2002).  Alternatively, Plaintiffs

4  may show either (1) that "the decision-making official was, as a

5  matter of state law, a final policymaking authority whose edicts

6  or acts may fairly be said to represent official policy in the

7  area of decision," or (2) by showing that "an official with final

8  policymaking authority either delegated that authority to, or

9  ratified the decision of, a subordinate."  I*d.*

10  Here, because the only remaining <u>named</u> defendants are the

11  City and the RDA, the *Monell* doctrine applies.  Thus far,

12  Plaintiffs have failed to assert that the allegedly

13  unconstitutional acts were in any way connected to a policy or

14  custom of the City or the RDA.  Accordingly, the entire complaint

15  must be **DISMISSED** for failure to satisfy the requirements of

16  *Monell*.  As mentioned above, however, Plaintiffs will be afforded

17  a final opportunity to amend.

18

19  ### *b.    Individual Liability.*

20  A properly pled claim against an <u>individual government</u>

21  <u>official</u> acting in their personal capacity[5] can be quite

22

23  [5]    Many cases discuss the difference between (a) suing an
   individual official in his or her "official capacity" and (b)

24  suing an individual in his or her "personal capacity."  *See Hafer
   v. Melo*,  502 U.S. 21, 25 (1991).  This distinction is not

25  particularly important to Plaintiffs in this case, but to avoid

26  future confusion, the difference is explained clearly in *Hafer*:

27  [O]fficial-capacity suits generally represent only another

28  way of pleading an action against an entity of which an

**17**

different from a *Monell* claim against a government entity.  For example, "to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

A plaintiff suing an individual official in their personal capacity is not required to establish any a connection between the allegedly unlawful act and a governmental "policy or custom." However, officials sued in this manner may assert personal immunity defenses such as qualified[6] or absolute[7] immunity.

────────────

officer is an agent. Suits against state officials in their official capacity therefore should be treated as suits against the State...Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law. For the same reason, the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses.

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, on the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. While the plaintiff in a personal-capacity suit need not establish a connection to governmental policy or custom, officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law.

*Id.* at 21 (internal citations and quotations omitted).

        [6]    Deciding whether an individual official is entitled to qualified immunity (and is thereby immune from liability) entails a two-step analysis.  First, a court must ask whether the plaintiff's Constitutional or federal statutory rights were

**18**

1  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

2      As mentioned above, the second amended complaint does not

3  actually name any individual defendants.

4

5              **3.    Fourth Amendment claim.**

6      The complaint alleges that the City violated Plaintiffs'

7  Fourth Amendment rights by entering their property, investigating

8  the condition of the structure on the property, and then using

9  the information gathered to support its determination that

10  abatement was necessary.  Defendants have not yet challenged this

11  claim on its merits, nor can the district court discuss the

12  merits of the claim in any meaningful way because the factual

13

14  violated at all.  If the answer to this question is yes, the
    court must then inquire whether the right violated was "clearly

15  established" by asking whether a reasonable individual could
    believe that the defendant's actions were lawful.  If the

16  official reasonably believed his or her actions were lawful, the
    official cannot be subjected to further litigation.  *See Saucier*

17  *v. Katz*, 533 U.S. 194, 201 (2001).

18      [7]   The federal courts have long-recognized the doctrine of

19  judicial immunity, a "comparatively sweeping form of immunity"
    for acts performed by judges related to the "judicial process."

20  *Forrester v. White*, 484 U.S. 219, 225 (1988).  This immunity is
    "absolute" and operates to protect judges against civil claims,

21  even if it is alleged that such action was "driven by malicious
    or corrupt motives."  *In re Castillo,* 297 F.3d 940, 947 (9th Cir.

22  2002); see also *Forrester,* 484 U.S. at 227-28.  "Absolute

23  judicial immunity is not reserved solely for judges, but <u>extends
    to nonjudicial officers for all claims relating to the exercise</u>

24  <u>of judicial functions</u>."  *Castillo*, 297 F.3d at 947.  There also
    exist similar absolute immunities for legislators, *Bogan v.*

25  *Scott-Harris*, 523 U.S. 44, 49 (1998); *Kaahumanu v. County of*

26  *Maui*, 315 F.3d 1215, 1219 (9th Cir. 2003), and for prosecutors,
    *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997); *Genzler v.*

27  *Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005), when those
    officials act within the scope of their authority.

28

**19**

record is not yet well-developed on this issue.  Nevertheless, because Plaintiffs only name local government entities as defendants and have failed to satisfy *Monell*, any Fourth Amendment claims are **DISMISSED WITHOUT PREJUDICE.**

### 4.    Due Process claims.

Scattered throughout the second amended complaint are references to violations of Plaintiffs' Due Process rights. Plaintiffs essentially assert that the hearing and appeals process did not properly protect their procedural Due Process rights.

To state a procedural Due Process claim, plaintiff must demonstrate that no "meaningful postdeprivation remedy" is available to them under <u>state</u> law.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  In California, appellate and post-judgment tort remedies can provide a meaningful remedy for the violations alleged in Plaintiff's complaint.  Plaintiff's complaint contains no allegation that they have pursued any state <u>judicial</u> review of those claims or why such remedies would be inadequate.  Any such due process claims are **DISMISSED WITHOUT PREJUDICE.**

### 5.    Conspiracy allegations.

As noted in the summary of the second amended complaint above, Plaintiffs allege that a large number of individuals "conspired to [aid] the act of fraud and false statements committed by Officer Watkins" in violation of Plaintiffs' constitutional rights pursuant to 18 U.S.C. §§ 872, 1001, 1018, 1621, 1957, and 2236; and 42 U.S.C. §§ 1981, 1983, 1985(3), and

**20**

1986.

First, a number of the statutory provisions mentioned by Plaintiffs (18 U.S.C. §§ 872, 1001, 1018, 1621, 1957 and 2236) are criminal statutes.  Private citizens do not have standing to pursue claims against Defendants under these provisions.  See *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").  Claims brought under these criminal provisions must be **DISMISSED WITH PREJUDICE.**

Second, 42 U.S.C. §§ 1981, 1985(3)[8] and 1986 apply only to civil rights violations (or conspiracies to violate civil rights) that are motivated by race discrimination.  *See General Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 391

---

[8]     Section 1985 prohibits several forms of conspiracies to deprive individuals of the rights and privileges held by a citizen of the United States.  Sub-sections 1985(1) and 1985(2), which deal with conspiracies to impede federal officials in the performance of their duties and conspiracies to obstruct justice, do not appear to be applicable on the facts presented.  Section 1985(3), entitled "depriving persons of rights or privileges," may be applicable to the facts as alleged in Plaintiff's proposed second amended complaint.  Section 1985(3) is divided into three parts.  The first part prohibits conspiracies to deprive "any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3). The second part prohibits conspiracies to interfere with federal elections, *generally Bretz v. Kelman*, 773 F.2d 1026, 1028 n.3 (9th Cir. 1985), and is not implicated in this case. The third clause provides a cause of action in federal court for the victim of conspiracies prohibited by § 1985(3).

To state a claim under the first part of §1985(3) (conspiracies to deprive an individual of equal protection of the laws or equal privileges and immunities), plaintiff must show "discriminatory animus."  In other words, Plaintiffs must allege that the conspiracy was motivated by racial discrimination. *Griffen*, 403 U.S. at 101-102.

1    (1982).  *Griffen v. Breckenridge*, 403 U.S. 88, 101-102 (1971).

2    Although Plaintiffs make a point of mentioning that they are

3    African American and South East Asian, their complaint contains

4    absolutely no suggestion that any actions taken by defendant were

5    motivated by race in any way.

6         Plaintiffs also allege the existence of a conspiracy to

7    deprive them of their civil rights in violation of 42 U.S.C.

8    § 1983.  A claim under § 1983 does not necessarily require proof

9    of race discrimination.  As discussed above, "[T]o establish

10   personal liability in a § 1983 action, it is enough to show that

11   the official, acting under color of state law, caused the

12   deprivation of a federal right."  *Graham*, 473 U.S. at 166.

13        However, to plead claims of <u>conspiracy</u> under any of the

14   civil rights statutes, including section 1983, Plaintiffs must

15   properly plead the existence of a conspiracy (i.e., the agreement

16   of two or more persons to achieve an unlawful objective with the

17   intent to do so, coupled with an overt act).  Plaintiffs may not

18   rely on conclusory accusations that Defendants conspired to

19   deprive Plaintiffs of their civil rights.  In other words, bare

20   allegations that one defendant "conspired" with another are

21   insufficient.  *See Harris v. Roderick*, 126 F.3d 1189, 1195 (9th

22   Cir. 1997).  Rather, "[t]o state a claim for a conspiracy to

23   violate one's constitutional rights under section 1983, the

24   plaintiff must state specific facts to support the existence of

25   the claimed conspiracy."  *Burns v. County of King*, 883 F.2d 819,

26   821 (9th Cir. 1989); *see also Lee v. City of Los Angeles*, 250

27   F.3d 668, 679 n.6 (9th Cir. 2001) (holding that plaintiffs must

28   allege facts which are "specific and concrete enough to enable

**22**

1  the defendants to prepare a response, and where appropriate, a
2  motion for summary judgment based on qualified immunity.").
3  Plaintiff may meet the heightened pleading standard by alleging
4  "which defendants conspired, how they conspired and how the
5  conspiracy led to a deprivation of [their] constitutional
6  rights...." *Harris*, 126 F.3d at 1196.

7       The second amended complaint labels as "co-conspirators"
8  every City or other government official who was involved with
9  Plaintiff's abatement case in any way.  That the actions of these
10 officials all contributed to an end that Plaintiffs' did not
11 desire does not mean that all of the officials "conspired" with
12 one another to deprive Plaintiffs of their civil rights by having
13 the requisite intent.  As currently framed, Plaintiffs' complaint
14 fails to allege a conspiracy.  The conspiracy claims are
15 **DISMISSED WITHOUT PREJUDICE.**

16

17              **6.   Alleged violation of 42 U.S.C. § 2000d.**

18      According to the complaint, the RDA operates at least in
19 part on federal funds.  Compl. at ¶5.  Plaintiffs allege that the
20 RDA, by refusing to provide them with financial assistance,
21 violated 42 U.S.C. 2000d, which provides:

22           No person in the United States shall, on the ground of
             race, color, or national origin, be excluded from
23           participation in, be denied the benefits of, or be
             subjected to discrimination under any program or
24           activity receiving Federal financial assistance.

25 By its terms, this statute only applies if Plaintiffs have
26 suffered discrimination on account of their race, color, or
27 national origin.  Here, as explained above, Plaintiffs have
28 simply stated their race and national origin.  Nowhere do they

assert how or that the RDA or any other defendant discriminated against them on the basis of their race, color, or national origin.  *See generally, Guardians Ass'n v. Civil Service Com'n of City of New York*, 463 U.S. 582 (1983).  This claim is **DISMISSED WITHOUT PREJUDICE.**

### 7.  Punitive damages.

Punitive damages are not allowed against public entities as a matter of law.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Such damages might be available against individual defendants, but none are named in this case.

### C.  Allegedly Unlawful Acts of Senator Barbara Boxer.

Plaintiffs assert that Senator Barbara Boxer's office somehow contributed to the alleged civil rights violations by failing to take action in response to Plaintiffs' letter of complaint.  Even if Plaintiffs were able to demonstrate that this conduct was unlawful -- which appears doubtful -- Senator Boxer is a federal official.  "[F]ederal officials acting under federal authority are generally not considered to be state actors," *Cabrera v. Martin*, 973 F.2d 735, 742 (9th cir. 1992).  In some circumstances, a federal official may be liable under § 1983 if "they are found to have conspired with or acted in concert with state officials to some substantial degree."  *Id*.  But Plaintiffs have offered no evidence of such a conspiracy.

//

//

//

**24**

**D.   <u>Plaintiffs' Renewed "motion" for Default Judgment</u>**.

Plaintiffs argue in their opposition that Defendants have failed to file a responsive pleading and instead have chosen to "cause more delay" by filing a motion to dismiss.  They then include (in the body of their opposition) a renewed "motion" for default judgment.  *Id*. at ¶28.

This argument has no merit.  Federal Rule of Civil Procedure 12(a)(1)(A) provides that a defendant shall serve an answer within 20 days after being served with the summons and complaint "unless a different time is prescribed."  Rule 12(a)(4)(A) alters this deadline:

> ...the service of a motion permitted under this rule alters these periods of time as follows:
>
> > (A) if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 10 days after notice of the court's action

Therefore, the service of a motion to dismiss pursuant to 12(b)(6) suspends the deadline for filing an answer until ten (10) days after such motion to dismiss is denied.  (Obviously, if the motion to dismiss is granted, no answer is required.)

Accordingly, Plaintiff's motion for default judgment is unfounded and is **DENIED.**

**E.   <u>Rule 11.</u>**

As discussed during the hearing on the instant motions, Plaintiffs are cautioned to file an amended complaint that is grounded in both fact and law.  Federal Rule of Civil Procedure 11 gives the court authority to issue sanctions against a party who signs a "pleading, written motion, or other paper" is not

well grounded in fact, is not warranted by existing law, is not
made in good faith, or is brought for any improper purpose.
*Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir.2002);
*Moser v. Bret Harte Union High School Dist.*, 366 F. Supp. 2d 944,
949 (E.D. Cal. 2005).[9]

## V.   CONCLUSION

For the reasons set forth above;

(1)   The County's motion to dismiss is **GRANTED**, the claims
against the County are **DISMISSED WITH PREJUDICE,** and
the County is **DISMISSED AS A DEFENDANT.**

(2)   The City and RDA's motion to dismiss is **GRANTED:**

(a)   Any criminal claims brought under the provisions
of Title 18 are **DISMISSED WITH PREJUDICE,** as
Plaintiffs have no standing to bring them;

(b)   All other claims are **DISMISSED WITHOUT PREJUDICE;**

(3)   Plaintiffs motion for default is **DENIED;**

(3)   Plaintiffs are afforded one additional opportunity to
amend their complaint to state valid claims under
federal law.  Any such amendment shall be filed on or
before **August 15, 2005.**

**SO ORDERED.** July 19, 2005

```
_____/s/ OLIVER W. WANGER__
       Oliver W. Wanger
  UNITED STATES DISTRICT JUDGE
```

---

[9]   Rule 11 applies to parties proceeding pro se.  *See*
*Simpson v. Lear Astronics Corp.,* 77 F.3d 1170, 1177 (9th Cir.
1996).